COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-233-CV

 

 

LINDA GOMEZ AND JOE CHRISTOPHER                                APPELLANTS

GOMEZ,
INDIVIDUALLY AND AS NEXT 

FRIEND
OF AUSTIN GOMEZ, A MINOR

 

                                                   V.

 

ALLSTATE TEXAS LLOYDS INSURANCE 

COMPANY                                                                            APPELLEE

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction








This is a liability insurance
dispute concerning coverage under a homeowner=s policy for bodily injury arising from the use of a Afour-wheeler@ all-terrain
vehicle.  Appellants Linda and
Christopher Gomez appeal from the trial court=s grant of summary judgment in favor of Appellee Allstate Texas Lloyds
Insurance Company.  The Gomezes raise
three issues.  First, the Gomezes argue
the trial court improperly interpreted the scope of the policy=s recreational
vehicle exception to the motor vehicle exclusion.  Second, the Gomezes argue that Allstate owes
a duty to defend because the underlying pleadings as to where the accident
occurred at least potentially allege a claim within the exception to the motor
vehicle exclusion.  Finally, the Gomezes
argue the trial court improperly rendered judgment on Allstate=s duty to indemnify.  We reverse
and remand.

II. Factual and Procedural
Background

The Gomezes sued Jamy and
Lara Johnson for injuries alleged to have occurred when Austin GomezCthe Gomezes= then
six-year-old sonCwas a guest
at the Johnsons= home, and
Jamy placed Austin on a four-wheeler with no protective gear and allowed him to
operate the vehicle.  The Gomezes= petition alleges that Austin lost control of the four wheeler and Awent over an embankment.@  The petition further alleges
that the Johnsons were negligent in the following ways:

(a)
In failing to properly supervise, control, and/or prohibit the use of the
four-wheeler; 

 

(b)
In allowing a six year old to use a motorized vehicle on public streets; 

 

. . . .








(d)
In failing to instruct and train [Austin] as to how to use the brakes to stop
the four-wheeler;

 

(e)
In failing to instruct and train [Austin] as to how to turn the steering wheel
on the four-wheeler;

 

. . . .

 

(h) In allowing an unreasonably dangerous vehicle
to exist on       the premises where
children would be attracted to this         nuisance;

 

(i) In failing to protect and safeguard small
children from     unreasonably dangerous
conditions on the premises;

 

(j) In failing to warn of the potential existence
of                unreasonably dangerous
conditions on the premises;

 

(k) In
allowing an unlicensed, untrained, underage child to   ride the four-wheeler without any adult supervision . . . . 








Allstate provided a defense
under a reservation of rights and filed a declaratory judgment action, seeking
a declaration that it had no duty to defend or indemnify the Johnsons because
the policy=s
motor-vehicle exclusion precluded coverage.[1]  Allstate then filed a traditional motion for
summary judgment in the declaratory judgment suit.  As summary judgment evidence, Allstate relied
solely on the Gomezes= original
petition in the underlying lawsuit and the homeowner=s policy issued to the Johnsons. 
The trial court granted Allstate=s motion for summary judgment and the Gomezes filed this appeal. 

III. The Insurance Policy

The homeowner=s insurance policy issued by Allstate to the Johnsons contains the
following potentially relevant provisions: 

SECTION
IICLIABILITY
COVERAGE

 

COVERAGE
C (Personal Liability).

 

If a
claim is made or a suit is brought against an insured for damages
because of bodily injury or property damage caused by an occurrence
to which this coverage applies, we will:

 

1.                 
pay up to our limit of liability for the damages for
which the insured is legally liable. 
Damages include pre-judgment interest awarded against the insured;
and 

 

2.                 
provide a defense at our expense by counsel of our
choice even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or
suit that we decide is appropriate.  

 

. . .
. 

 

SECTION
IICEXCLUSIONS

 

3.                 
Coverage C (Personal Liability) and Coverage D (Medical
Payments to Others) do not apply to:

 

. . . . 

 

f.          bodily injury or property damage arising out
of the ownership, maintenance, operation, use, loading or unloading of:

 








(1)        motor or engine propelled vehicles or machines designed for
movement on land, including attached machinery or equipment;

 

(2)        trailers, semi-trailers or mobile homes; which are owned or
operated or rented or loaned to an             insured.[2]

 

However, this exclusion does not apply to:

 

(1)        motor vehicles which are not subject to motor vehicle
registration and are:

 

(a)        used for
assisting the handicapped.                    

(b)        used to service
an insured location.

 

(c)        golf carts while on the residence premises or
used for golfing purposes.

 

(d)        designed and used for recreational purposes; and are:

 

(i)         not owned by an insured; or

 

(ii)        owned by an insured while on the residence premises.[3]

 

(e)        in dead storage
on the residence premises.

 

(f)         used exclusively
on the residence premises.[4]








 

IV.
Standard of Review

 

We review the trial court=s granting of a motion for summary judgment de novo.  Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994).  In a summary
judgment case, the issue on appeal is whether the movant met the summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979).  The burden of
proof is on the movant, and all doubts about the existence of a genuine issue
of material fact are resolved against the movant.  Sw. Elec. Power Co., 73 S.W.3d at 215.

The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 678.

V. Insurance Policy
Interpretation Rules








In resolving an insurance coverage dispute, we apply the
rules of contract construction. See Kelley-Coppedge, Inc. v. Highlands Ins.
Co., 980 S.W.2d 462, 464 (Tex. 1998). In applying these rules, our primary
concern is to ascertain the parties= intent as
expressed in the language of the policy.  See id. 
When determining the intent of the parties, we examine only the language
of the insurance policy to see what is actually stated.  See Esquivel v. Murray Guard, Inc.,
992 S.W.2d 536, 544 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  We must
consider all of the provisions with reference to the entire policy; no single
provision will be controlling. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). If a policy is so worded that it can be given a definite or certain
legal meaning, then it is unambiguous as a matter of law.  Kelley-Coppedge, 980 S.W.2d at 464. A
policy is not ambiguous merely because the parties advance conflicting contract
interpretations.  See id. at
465.  Only after we determine that the
policy=s provision is
ambiguous will we construe it liberally in favor of coverage.  See Glover
v. Nat=l Ins.
Underwriters, 545 S.W.2d 755, 761 (Tex.
1977).


VI. The Eight-Corners Rule








Under the eight-corners or complaint-allegation rule, an insurer=s duty to defend is determined by the third-party plaintiff=s pleadings, considered in light of the policy provisions, without
regard to the truth or falsity of those allegations.  GuideOne Elite Ins. Co. v. Fielder Rd.
Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006).  The rule takes its name from the fact that
only two documents are ordinarily relevant to the determination of the duty to
defend:  the policy and the pleadings of
the third-party claimant.  Id.  

Facts outside the pleadings, even those easily ascertained, are
ordinarily not material to the determination, and allegations against the
insured are liberally construed in favor of coverage.  Id. 
A plaintiff=s factual allegations
that potentially support a covered claim are all that is needed to invoke the
insurer=s duty to defend, whereas
the facts actually established in the underlying suit control the duty to
indemnify.  Id. at 310.  We focus on the petition=s factual allegations showing the origin of the damages claimed, not the
legal theories alleged.  Nat=l Union Fire Ins. Co. v. Merchants Fast Motor
Lines, Inc., 937
S.W.2d 139, 141 (Tex. 1997).  A duty to
defend any of the claims against an insured requires the insurer to defend the
entire suit.  CU Lloyds of Tex. v.
Main Street Homes, Inc., 79 S.W.3d 687, 692 (Tex. App.CAustin 2002, no pet.).

VII. Discussion

A. Allstate=s Failure to Verify Summary Judgment Evidence

In part of their second
issue, the Gomezes argue that Allstate failed to authenticate the copy of the
underlying petition attached to their motion for summary judgment  because it was neither certified nor
supported by affidavit. Therefore, the Gomezes argue, the attached petition was
not proper summary judgment evidence of the underlying allegations.  We disagree.








Public records are valid
summary judgment evidence when they are authenticated or certified.  Tex.
R. Civ. P. 166a(c).  But defects
in the form of affidavits or attachments will not be grounds for reversal
unless specifically pointed out by objection by an opposing party with
opportunity, but refusal, to amend. Tex.
R. Civ. P. 166a(f); see Republic Bankers Life Ins. Co. v. Wood,
792 S.W.2d 768, 774-75 (Tex. App.CFort Worth 1990, writ denied) (holding that failure to object to
summary judgment evidence prior to judgment waives the objection that evidence
is not properly authenticated).  These
type of alleged defects are a matter of form easily cured if pointed out to the
trial court in response to a motion for summary judgment.  Id. at 775.  Objections to such defects raised for the
first time in a motion for new trial are insufficient to preserve error.  Jones v. McSpedden, 560 S.W.2d 177,
179 (Tex. Civ. App.CDallas 1977,
no writ).  

The Gomezes failed to object
to the lack of certification or affidavit until they filed their motion for new
trial.  Therefore, they failed to
preserve error, and we overrule this part of their second issue.

B. The Recreational Vehicle
Exception 








In their first issue, the Gomezes argue the trial court
improperly interpreted the scope of the policy=s recreational
vehicle exception to the motor vehicle exclusion.  They contend that the exception is ambiguousCtherefore it must
be construed in favor of the insured.  We
disagree.  To determine this coverage
question, we must carefully examine the policy language in dispute.

The parties agree the motor vehicle exclusion applies to
the allegations in the underlying petition. 
But the Gomezes argue the recreational vehicle exception also applies,
thereby bringing the allegations within the scope of coverage.  However, the parties offer differing
interpretations of the recreational vehicle exception. 








The Gomezes maintain the trial court erroneously accepted
Allstate=s argument that
whether the recreational vehicle exception to the motor vehicle exclusion
applies depends on where the vehicle is Aused,@ thereby
improperly inserting the word Ause@ or Aused@ into the
exception.  The Gomezes argue that the policy
does not state that the recreational vehicle exception provides coverage only
when such a vehicle is used on the residence premises.  They contend the exception is thus ambiguous;
therefore, we must adopt a reasonable construction of the clause urged by
them.  The Gomezes argue that the purpose
of a homeowner=s policy is to insure against premises
liability claims.  Consistent with this
alleged intent, their suggested interpretation of the language in the policy is:
AThe recreational
vehicle exception set forth in [the policy] conditions coverage on the insured
owning a recreational vehicle while it is on the insured=s property.@  Though difficult to understand, we interpret
the Gomezes= construction to mean that the
recreational vehicle exception affords coverageCregardless of where
the accident occursCso long as the recreational vehicle was
owned by the insured at some time while on the insured=s premises.  

On the other hand, Allstate asserts that the recreational
vehicle exception  is not ambiguous.  Rather, Allstate argues, the policy by its
plain terms means what it says, i.e., that coverage is afforded for
recreational vehicles owned by the insured only for bodily injury or property
damage Aarising out of the
. . . use@ of such vehicles while they are on the
residence premises.  Allstate further
argues that the policyCby its very languageCexcludes coverage
while such vehicles are off the residence premises. 








We agree with Allstate that the policy is not
ambiguous.  Looking at the policy as a
whole, we agree with Allstate=s interpretation
because it is based on the ordinary and generally accepted meaning of the terms
used in the policy.  When the terms of an
insurance policy are unambiguous, as they are here, they are to be given their
plain, ordinary, and generally accepted meaning.  See GuideOne Elite Ins.Co., 197 S.W.3d at
311.  Viewing the exception together with the
exclusion, the logical flow of the policy provides as follows: A[Personal
Liability coverage does not apply to] bodily injury . . .
arising out of the . . . ownership, maintenance, operation, use,
loading or unloading of . . . motor or engine propelled vehicles
. . . ; [however], this exclusion does not apply to . . .
[recreational vehicles][5]
. . . owned by an insured while on the residence premises.@  [Emphasis added.]  In other words, coverage is afforded for
recreational vehicles owned by the insured only for liability for bodily injury
arising out of the ownership, maintenance, operation, use, loading, or
unloading of an owned recreational vehicle while it is on the residence
premises.  The trial court did not have
to, as the Gomezes contend, read into the policy the word Ause@Cthat language is
already in the policy.[6]  








In an attempt to strengthen their argument, the Gomezes
offer an example of language they claim Allstate should have used in the policy
to achieve the result the trial court reached. 
Specifically, the Gomezes point to a recreational vehicle exception to a
motor vehicle exclusion addressed in a decision by the Supreme Court of Texas,
for recreational vehicle accidents that happen off the insured=s premises by
using the phrase Aoccurs away from the resident
premises . . . .@ Fid. &
Guar. Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788 (Tex. 1982).
[Emphasis added.]  The Gomezes= reliance in McManus
is misplaced.  First, that case is
irrelevant to our analysis for a simple reasonCit involves a
different policy with different language. 
We are limited to an examination of the language in the policy before
us.  See Fiess
v. State Farm Lloyds, 202 S.W.3d 744, 745 (Tex. 2006). 
Second,
as Allstate points out, we cannot find ambiguity in an insurance policy simply
because a policy could have been drafted to resemble other policies.  Id. 
We overrule the Gomezes= first issue.                           

C. Allegations in the
Underlying Petition

In the remainder of their
second issue, the Gomezes contend that Allstate incorrectly argued in the trial
court that the Gomezes= petition
affirmatively alleged that the accident occurred on a public street and,
therefore, necessarily occurred off the residence premises.  The Gomezes correctly note that the petition
does not allege where the accident occurred, whether on or off the residence
premises.   Thus, they argue, under the
eight-corners rule the petition at least potentially alleges that the accident
occurred on the residence premises, thereby precluding summary judgment.  We agree. 








The petition does not
affirmatively state where the four-wheeler accident occurred.  Allstate points to allegations that the
Johnsons were negligent by allowing Aa six-year-old to use a motorized vehicle on public streets.@ [Emphasis added.]  But the
petition also alleges the Johnsons failed Ato warn of the potential existence of unreasonably dangerous
conditions on the premises . . . .@ [Emphasis added.]  The petition
further alleges the son Alost control
of the four-wheeler and went over an embankment.@  The petition does not state
whether this embankment was on or off the Johnsons= premises.  Construing the
petition liberally in favor of the insured, a reasonable inference may be drawn
that the accident occurred on the Johnsons= premises.  See Allstate Ins.
Co. v. Hallman, 159 S.W.3d 640, 644-45 (Tex. 2005) (interpreting petition
together with inference that could be drawn in applying eight-corners
rule).  We agree that the petition
potentially alleges a claim within coverage for the alleged injuries arising
out of use of the four-wheeler on the residence premises.  Therefore, we hold that Allstate failed to
establish its right to summary judgment as a matter of law on the basis that it
owed no duty to defend the Johnsons in the underlying suit.








The Gomezes further argue
that other allegations of specific acts of negligence by the insureds occurring
on the premises do not base liability on use or operation of the four-wheeler
but on their duties as landowners.  They
contend that the allegations of such negligent conduct provide an alternate
basis for liability of the insureds that does not fall within the motor vehicle
exclusion at all.[7]  Allstate responds that because the claimed
damages Aarise out of@ use of a
motor vehicle, the motor vehicle exclusion applies.  We agree with Allstate=s observation.  Regardless of
where the insureds= alleged
negligence took place or whether the various allegations of negligent acts or
omissions state distinct and independent theories of liability, use of a motor
vehicle is still essential to liability. 
See McManus, 633 S.W.2d at 780 (holding allegations of negligent
entrustment of motor vehicle by insured to third person did not state theory
independent of use of motor vehicle since claim for damages still arose out of
use of vehicle).    








But Allstate=s observation does not defeat its duty to defend.  To summarize, the Gomezes alleged a
potentially covered occurrenceCan injury arising from the use of a recreational vehicle that may
have occurred on the residence premises. 
See GuideOne Elite
Ins. Co., 197 S.W.3d at 308.  Interpreting
the petition liberally in favor of the insureds and resolving all doubts in
favor of coverage, we hold the petition states a potentially covered claim for
which Allstate owes a defense.  See
id; see also Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  We sustain
this part of the Gomezes second issue.  

D. The Duty to Indemnify

In their third and final
issue, the Gomezes argue the trial court improperly concluded that its finding
of no duty to defend negated any duty to indemnify. We agree. 

The duty to defend and the
duty to indemnify are not synonymous.  Farmers
Tex. County Mut. Ins. Co. v. Griffin, 
955 S.W.2d 81, 82 (Tex. 1997). 
Rather, these duties are separate and distinct.  Id. 
Unlike the duty to defend, the duty to indemnify is not based on the
eight corners of the policy and the underlying petition, but on the actual facts
that form the underlying claim.  Alliance
Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex. App.CDallas 1990, writ dism=d).  While an insurer=s duty to indemnify can be negated for the same reasons an insurer=s duty to defend is negated, the duty to indemnify cannot be resolved
before the duty to defend.  See Griffin,
955 S.W.2d at 82.








We have held the Gomezes= petition states a potentially covered claim because it does not state
where the accident and injuries took place. 
Without knowing all the actual facts, we hold the duty to indemnify is
not ripe for determination.  Therefore,
the trial court=s granting
of summary judgment was improper as to Allstate=s duty to indemnify.  We sustain
the Gomezes= third
issue.                  

VIII. Conclusion

Having overruled the Gomezes
first issue, overruled their second issue in part and sustained it in part, and
sustained their third issue, we reverse the trial court=s judgment and remand the cause to the trial court for further
proceedings.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:  November 1, 2007











[1]The
Johnsons are not a party to this appeal. After the Gomezes filed suit, the
Johnsons filed for bankruptcy.  The
Johnsons=
alleged personal liability was discharged in bankruptcy without prejudice to
the rights of the Gomezes to recover damages under the Allstate policy.  Although the Johnsons are parties to the
declaratory judgment, they did not file notices of appeal. 





[2]In
their briefs, both parties refer to this clause as the Amotor
vehicle exclusion.@  We will use this language as well.  





[3]In
their briefs, both parties refer to this clause as the Arecreational  vehicle exception.@  We will use this language as well.  





[4][Emphasis
in original].





[5]The
parties do not dispute that the four-wheeler is a Arecreational
vehicle@Cthat
is, a Amotor
vehicle[] . . . not subject to motor vehicle registration@ and Adesigned
and used for recreational purposes.@  





[6]The
New Jersey Superior Court has held that policy language strikingly similar to
the language found in this case was an unambiguous expression that the
recreational vehicle exception applied only to bodily injury arising out of use
of owned recreational vehicles on the insured=s
premises. See Iorio ex rel Iorio v. Simone, 773 A.2d 722 (N.J.
Super. Ct. App. Div. 2002).  In Simone,
the language of the policy was, A[coverage does not apply to] bodily injury . . .
arising out of . . . the ownership, maintenance, use, loading
or unloading of motor vehicles . . .; [however] . . .
[t]his [motor vehicle] exclusion does not apply to . . . a
[recreational vehicle] . . . owned by any insured and on an
insured location.@
[emphasis added]. Id. at 724.





[7]The
Gomezes alleged, among other acts of negligence, that the Johnsons were
negligent in not protecting children from Aunreasonable dangerous
conditions on the premises,@ not warning of the Apotential
existence of unreasonably dangerous conditions on the premises,@ and
not Asecuring
the vehicle on the premises to prevent injuries to small children.@